307 N.E.2d 870 (1974)
STATE of Indiana On the Relation of Indianapolis Water Company and the Shorewood Corporation, Relators,
v.
THE BOONE CIRCUIT COURT, the Honorable Charles F. Thompson, Judge, Respondent.
No. 1073S217.
Supreme Court of Indiana.
March 6, 1974.
*871 G.R. Redding, John L. Woolling, Fred E. Schlegel, Indianapolis, for relators; John W. Donaldson, Lebanon, Baker & Daniels, Indianapolis, of counsel.
Charles S. Gleason, Gleason, Woods & Johnson, Indianapolis, Paul G. Smith, Smith, Pearce & Barr, Noblesville, David S. Richey, Parr, Richey, Obremskey, Pedersen & Morton, Lebanon, for respondent.
GIVAN, Justice.
This is an original action brought by the Indianapolis Water Company and its wholly-owned subsidiary, The Shorewood Corporation, wherein they requested a writ of prohibition against the respondent prohibiting it from all other further proceedings in Cause No. C73-6 in the Boone Circuit Court. The case in the court below was brought as a class action on behalf of all customers of the Indianapolis Water Company who have purchased, and will purchase, water from the Water Company at what the plaintiffs characterize as "excessive rates."
The complaint alleges the Water Company has charged rates based upon expenditures for land purchased in the course of the development of Morse Reservoir. It is alleged that over 6,000 acres were purchased by the Water Company in excess of the land needed to develop the Reservoir, and that subsequently this excess land was transferred to The Shorewood Corporation on a cost basis. It was the purpose of The Shorewood Corporation to develop this land and sell it for private residential purposes at prices greatly in excess of the amount paid for the land.
It is plaintiffs' contention in the court below that the profits so realized should have been taken into consideration in fixing the rates charged to the customers of the Water Company.
The plaintiffs seek compensatory damages in the amount of $150,048,000 and $150,000,000 in exemplary damages against the defendants by reason of their alleged misconduct and improper rate charging.
A hearing was had on October 29, 1973, in this Court, following which this Court entered an alternative writ of prohibition commanding the Boone Circuit Court to refrain from all further proceedings in the cause or to show cause, if any there be, on or before November 19, 1973, why the writ should not be made absolute.
It is the position of the relators that the conduct of the Water Company and The Shorewood Corporation was at all times known to the Public Service Commission. The Public Service Commission did, in fact, following hearings held in 1964 discuss the Morse Reservior land transaction in some detail and in so doing stated:
"However, the Commission cannot condone the absolute failure of management to ascertain the market value by appropriate appraisals when this land was sold to a separate but wholly-owned subsidiary in exchange for that subsidiary's stock for the reason that any value at the time of the transfer in excess of the book cost should have been reflected in the Petitioner's surplus account. The Commission finds that the proper accounting of this retirement of land would have been the same under Instruction No. 7 or No. 10 when read in their entirety. Instructions 10E and 7E both *872 clearly indicate that the difference between the book cost and the sale price shall be credited as surplus. An appropriate independent appraisal at the time of the transfer could have resulted in a credit to the surplus account, thus changing the capital structure which, in turn, would have reduced the cost of capital. For this reason, the Commission is taking this fact into account in determining the rate of return in this cause."
Again in 1968 and 1969 there were contested hearings before the Commission concerning Water Company rates, and the Morse Reservoir land issue was again presented and discussed. The question was again forcefully presented by the City of Indianapolis which was among the parties opposing the proposed rates of the Water Company and considered by the Public Service Commission.
The respondent has relied in part on the case of Foltz v. City of Indianapolis (1955), 234 Ind. 656, 130 N.E.2d 650. In that case this Court held that where a business is affected by the public interest and the legislature has not provided a procedure to assure fair and reasonable rates, the common law will supply the omission. However, this principle of law does not apply to the case at bar. The Indianapolis Water Company is a public utility coming under the Public Service Commission which has been established by statute for the express purpose of regulating such utilities and having jurisdiction over the rates which they are permitted to charge their customers. The respondent also cites Burns' Ind. Stat. Ann., 1951 Repl., § 54-716, IC 1971 X-X-X-XXX, which reads as follows:
"This act shall not have the effect to release or waive any right of action by the state or by any person for any right, penalty or forfeiture which may have arisen, or which may hereafter arise, under any law of this state; and all penalties and forfeitures accruing under this act shall be cumulative and a suit for any recovery of one shall not be a bar to the recovery of any other penalty. [Acts 1913, ch. 76, § 126, p. 167.]"
The above statute might well have afforded the plaintiffs in the court below an action had the Water Company fraudulently concealed or withheld information from the Public Service Commission, or if the Water Company had charged rates in excess of those fixed by the Commission. However, neither is the case here. This Court has stated many times that rate making is a legislative and not a judicial function. The legislature has seen fit to establish the Public Service Commission for the express purpose of hearing evidence and balancing and weighing the many complicated factors which must be taken into consideration in setting utility rates. Boone County R.E.M.C. v. Public Service Commission (1959), 239 Ind. 525, 159 N.E.2d 121; Public Service Commission v. City of Indianapolis (1956), 235 Ind. 70, 131 N.E.2d 308.
The Public Service Commission had the jurisdiction and, in fact, did consider the effect of the activities of the Indianapolis Water Company and The Shorewood Corporation concerning the excess Morse Reservoir land. It did, in fact, after a hearing condemn this activity on the part of these companies and specifically stated that it was taking the fact of this improper conduct on the part of the corporation into consideration in fixing the rates. If the Water Company customers, who are now the plaintiffs in the action now pending before the Boone Circuit Court, felt as they apparently do feel that the Commission did not properly consider or did not properly act upon the facts before it concerning the fixing of the rates following the land transaction, they had the full right under the law to appeal the action of the Commission. They thus had a remedy at law provided by the legislature in the statute establishing the Public Service Commission and fixing its duties under the law. This Court has previously stated in Decatur County R.E.M.C. v. Public *873 Service Company (1971), Ind. App., 275 N.E.2d 857, at pages 860 to 862, 28 Ind.Dec. 128, in part as follows:
"If the legislature has provided a remedy, courts have no jurisdiction over the subject matter until such time as those remedies are exhausted or denied." * * *
After stating that the parties' remedy is to proceed through the Commission whose decision is subject to judicial review, the Court went on to state at page 862:
"The Commission is entrusted with the authority to control and regulate public utilities. State ex rel. Indianapolis Traction & Terminal Co. v. Lewis, (1918) 187 Ind. 564, 120 N.E. 129. As an administrative agency, it is presumed to be qualified by knowledge and experience to perform this function. The regulation of public utilities is a technical field requiring expertise in just the kind of determination before us. * * *
"* * *
"Litigants in these circumstances cannot take flight from an adequate statutory administrative remedy by seeking sanctuary in the courts."
Following oral argument in this case, the respondent submitted an additional authority, Democratic Central Comm. v. Washington Metropolitan Area Transit Comm'n, 485 F.2d 786 (D.C. Cir.1973). The Court has examined this additional authority and finds that it has no application to the matters at issue in this case. The Washington case was an appeal to the District of Columbia Court of Appeals from a decision of the District of Columbia Commission. After a very lengthy opinion setting out what the Court deemed to be the proper guideline for the rate setting, the cause was "remanded to the Commission for further proceedings consistent with this opinion." The decision in the Washington case follows the principle of law which we seek to follow in this case; that is, that the question of the proper fixing of rates is a matter to be determined by a Commission established for that purpose. The proper method of attack upon the fixing of a rate by a Commission is to appeal to the courts as provided by statute and not a collateral attack upon the rate fixing process such as attempted in the case at bar.
The alternative writ heretofore issued is now made permanent.
ARTERBURN, C.J., and HUNTER and PRENTICE, JJ., concur.
DeBRULER, J., dissents with opinion.
DeBRULER, Justice (dissenting).
The relators herein, defendants below, filed a motion for summary judgment which was denied by the trial court. That motion urged that there was no subject matter jurisdiction in the trial court to entertain the plaintiffs' claim.
In my view this Court should not entertain this case in an original action. Under TR. 56(E), IC 1971, 34-5-1-1, the denial of a motion for summary judgment is specifically made appealable only as part of an appeal of a final judgment. This is a specific recognition by the Legislature and this Court that the legal interests of a party whose motion for summary judgment is denied is satisfied when such interest is permitted to be asserted only in direct appeal of the final judgment in the case. I would therefore dissent on the grounds that this petition does not state a claim upon which this Court's original jurisdiction should be exercised.
However, in light of the majority opinion reaching the merits of petitioners' case, I also dissent, because the petitioners have failed to sustain their burden before this Court to establish clearly that the trial court has no subject matter jurisdiction.
Petitioners claim that plaintiffs' suit is for a redetermination of utility rates, in effect seeking a belated judicial review of a Public Service Commission order determining *874 utility rates. It is not. Plaintiffs below do not contest the correctness of rates set, but contend that the conduct of the Indianapolis Water Company is intentionally devised to force the Public Service Commission to set rates higher than they would be if the water company kept the true value of the land within its capital structure; thereby making it available for consideration in determining what the fair rate of return should be to the investors in the company.
Petitioners claim that plaintiffs' suit is barred by the Public Service Commission Act and the jurisdiction therein granted exclusively to the Public Service Commission. It is not. This cause of action concerns the propriety of the conduct of the public utility itself and the intentional divestment of its capital assets.
And finally, petitioners' claim, and support by affidavit and records of the Public Service Commission, that the Public Service Commission "took into consideration" the sale of land by the Indianapolis Water Company to the Shorewood Corporation for less than the fair market value, in making its previous rate order. Nothing in the pleadings or affidavits reveals what specific use the Public Service Commission made of their knowledge of this transaction. And I do not see how the fact that the Public Service Commission took cognizance of the transaction, should serve to deny the trial court subject matter jurisdiction. In my view the petitioners' arguments fail to satisfy their burden.
In his return respondent trial court also relies upon the following statute:
"Whenever an order has been lawfully made upon any public utility by the public service commission under the provisions of an act entitled `An act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission,' approved March 4, 1913, or by the state board of health under the provisions of an act entitled `An act concerning the purity of water supplied to any city or town for domestic use,' approved February 24, 1913, it shall be unlawful for such public utility, or any officer thereof, to pay any funds from its treasury to any other public utility for the purpose of concealing its income or assets or otherwise diverting the funds from their proper uses." (Emphasis added.) I.C. 1971, 8-1-10-1, being Burns § 54-721.
This statute, supports the trial court's jurisdiction to consider plaintiffs' claim that the sale at less than the fair market value to Shorewood was unlawful in that it constituted a diversion of funds from the Indianapolis Water Company and for other than a proper use. The following statute authorizes any person to bring an action against a public utility for damages for unlawful acts:
"If any public utility shall do, or cause to be done or permit to be done, any matter, act or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing required to be done by this act, such public utility shall be liable to the person, firm or corporation injured thereby in the amount of damages sustained in consequence of such violation: Provided, That any recovery as in this section provided shall in no manner affect a recovery by the state of the penalty prescribed for such violation." I.C. 1971, X-X-X-XXX, being Burns § 54-706.
These statutes establish the subject jurisdiction of the trial court to entertain this case, and the standing of the plaintiff rate payer to sue. Relator argues that § 54-721 is intended only to apply to a diversion of funds to another public utility. I do not believe such a narrow construction of the language is correct.
For all of the foregoing reasons, I dissent to the majority opinion and vote to deny the writ.