**W. Turton THOMPSON, Appellant (Plaintiff Below),**

v.

**MEDICAL LICENSING BOARD of Indiana and Ernest R. Beaver, James N. Hampton, Robert R. Kopecky, John H. Mader, Walter J. Beneville, Bruce C. Brink, and Edward L. Hollenberg, Individually and as Members of the Medical Licensing Board of Indiana, Appellees (Defendants Below).**

No. 2–1076A395.

Court of Appeals of Indiana, Second District.

April 25, 1979.

C. Robert Knight, Zionsville, Ronald E. Elberger, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Walter F. Lockhart, Asst. Atty. Gen., Indianapolis, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Dr. W. Turton Thompson (Dr. Thompson) appeals from dismissal of his complaint for an injunction and a declaratory judgment against the Medical Licensing Board of Indiana (Board) which sought to have his medical license revoked, claiming the trial court erred in dismissing his complaint because of failure to exhaust administrative remedies, constitutional infirmities in the medical licensing statutes, and denial of due process for refusal of discovery.

We affirm.

### FACTS

On October 23, 1975, Dr. Robert R. Kopecky, Secretary of the Board, filed a com-

plaint against Dr. Thompson seeking to revoke or suspend his medical license or that he be placed on probation for violating sections 5 and 6 of Ind.Code 25–22.5–6–2. It specifically charged that Dr. Thompson:

(1) illegally and knowingly issued prescriptions for Schedule II Controlled Substances, desoxyn and quaalude, and Schedule IV Controlled Substance, dalmane, to female patients for non-therapeutic purposes in exchange for sexual acts with these patients performed at his office;

(2) committed willful and wanton misconduct in the practice of medicine by illegally and knowingly issuing prescriptions for Schedule II Controlled Substances, desoxyn and quaalude, and Schedule IV Controlled Substance, dalmane, to female patients for non-therapeutic purposes in exchange for sexual acts with these patients performed at his office.

The Board set a hearing for November of 1975, to resolve these charges, but the hearing was twice continued by Dr. Thompson. Shortly before the new hearing date of February 12, 1976, Thompson retained new counsel and again sought a continuance which was denied. On February 11, 1976, he filed a complaint in Marion Superior Court seeking an injunction to delay the hearing and a declaratory judgment that the scheduled hearing would violate several constitutional guarantees. The violations he specifically alleged included the following:

a.) Thompson would be judged by Kopecky who is the complaining party;

b.) The complaint unlawfully incorporated by reference the provisions of other statutory provisions;

c.) It was unconstitutional to be tried before administrators who were not attorneys;

d.) He was prevented from deposing Board members in an attempt to find bias;

e.) Deputy attorney generals served the dual functions of prosecutor at the hearing and advisor to the Board on legal questions;

f.) The statute was unconstitutionally vague.

In order to support his suit seeking extraordinary relief Thompson asserted that allowing the Board to proceed with the hearing "could result in an improvident adjudication of guilt, the effects of which could not be vindicated after the proceeding took place." Concluding that he did not have adequate post-administrative hearing remedies regarding these constitutional issues he raised, he asserted that the trial court should intervene to protect him from suffering an irreparable harm.[1]

The State filed a Motion to Dismiss the suit claiming that Dr. Thompson should be required to exhaust the adequate administrative remedies available to him and that he should not be allowed to interfere with the administrative process.

During the course of the court proceedings Dr. Thompson claimed "bias and prejudice" on the part of the members and sought to depose them individually, a move which was thwarted by a protective order entered by the trial court on May 28.

On June 14, 1976, the trial court entered the following judgment on the State's motion:

. . . it is . . . ORDERED that defendant's [Board's] motion to dismiss be, and is hereby, GRANTED upon the ground that the plaintiff has failed to exhaust his administrative remedies before the Medical Licensing Board of Indiana. Accordingly, it is the judgment of this Court that plaintiffs' verified complaint be, and is hereby, DISMISSED, each party to bear its own costs in the action . . . .

Dr. Thompson sought and received an Injunction and Stay Pending Appeal, and appealed the trial court's decision to this Court.

1. Dr. Thompson does not specify precisely what irreparable harm he would suffer other than, presumably, a harm to his reputation caused by an "improvident adjudication of guilt."

## ISSUES

Because our holding is that the trial court properly dismissed Dr. Thompson's complaint for failing to exhaust his administrative remedy, we need only decide the following issue:

Did the trial court properly dismiss Dr. Thompson's action for an injunction and a declaratory judgment on the ground that he failed to exhaust his administrative remedies before filing suit?

PARTIES' CONTENTIONS—Dr. Thompson contends that although the principle of exhaustion of administrative remedies is a general rule, he should be allowed to bypass the normal review procedure because he has raised pure "questions of law" concerning constitutional issues. Unless he is permitted preliminary review of these questions, his professional reputation might suffer irreparable harm.

The State replies that Dr. Thompson has an adequate procedure for consideration of these issues under the Administrative Adjudication Act (Ind.Code 4–22–1–1 et seq.). As he has failed to demonstrate how he might be irreparably harmed by resorting to review under the AAA, the trial court correctly denied his extraordinary relief.

## DECISION

CONCLUSION—The trial court properly dismissed this action because Dr. Thompson failed to follow the administrative review procedure of the Administrative Adjudication Act.

## A. EXCLUSIVITY OF THE STATUTORY ADMINISTRATIVE REMEDY

■ By enacting the Administrative Adjudication Act (the Act) in 1947, the Indiana legislature recognized the basic need for unfettered action by administrative agencies operating within the sphere of their authority. *Uhlir v. Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312; *Indiana Alcoholic Beverage Com'n v. McShane* (1976), Ind.App., 354 N.E.2d 259.

The unmistakable aim of a uniform system of orderly review of administrative adjudications in Indiana is declared in the first section of the Act:

It is the intent *to establish a uniform method* of administrative adjudication by all agencies of the state of Indiana, to provide for due notice and an opportunity to be heard and present evidence before such agency *and to establish a uniform method of court review of all such administrative adjudication.* (emphasis supplied) Ind.Code 4–22–1–1.

That such court review of administrative action affecting legal relationships is intended to be exclusive, if more is needed, is emphasized by the explicit language of Section 3 of the Act:

In *every administrative adjudication* in which the rights, duties, obligations, privileges or other legal relations of any person are required or authorized by statute to be determined by any agency *the same shall be made in accordance with this act and not otherwise.* (emphasis supplied) Ind.Code 4–22–1–3.

Also *indicative of this same intent* is Section 30 invalidating any conflicting legislation:

The provisions of this act shall supersede or control the provisions of any general or special act or part of act in conflict herewith, passed by this general assembly, regardless of whether such act or acts were passed before or after the effective date (March 14, 1977) of this act.

Particularizing the grounds for review of administrative action is Section 14, which, after setting forth five grounds for review, significantly then terminates all rights of recourse to the courts unless the review procedure is followed. In pertinent part Section 14 says:

Any party or person aggrieved by any order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provisions of this act [4–22–1–1—4–22–1–30]. Such review may be had by filing with the circuit or superior court of the county in which such person resides, or in any county in which such order or determination is to be carried out or enforced,

a verified petition setting out such order, decision or determination so made by said agency, and alleging specifically wherein said order, decision or determination is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence.

Said petition for review shall be filed within fifteen [15] days after receipt of notice that such order, decision or determination is made by any such agency. Notice shall be given in the manner prescribed by section 6 [4–22–1–6] of this act. *Unless a proceeding for review is commenced by so filing such petition within fifteen [15] days any and all rights of judicial review and all rights of recourse to the courts shall terminate.* (emphasis supplied)

█ So the Act restricts access to the courts even though the administrative agency takes action affecting "rights, duties, obligations, privileges or other legal relations" (Section 3). And this broad statement includes constitutional rights, duties, and privileges inasmuch as the second stated ground for review of an order, decision, or determination is that the action taken is "contrary to constitutional right, power, privilege . . .".

The thrust of the Act is that the exclusive path to the courts is *by review*. The administrative process is not to be disrupted and delayed.[2]

The exclusivity of the review procedure contemplated by the Act is founded on the common-law principle of exhaustion of administrative review procedures before resorting to judicial action. *State ex rel.*

*Paynter v. Marion County Superior Court, Room No. 5* (1976), Ind., 344 N.E.2d 846; *City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459; *State ex rel. Evansville City Coach Lines, Inc. v. Rawlings* (1951), 229 Ind. 552, 99 N.E.2d 597.

A forceful statement of this concept is found in *Public Service Commission of Indiana et al. v. City of Indianapolis* (1956), 235 Ind. 70, 83, 131 N.E.2d 308, 313:

However, where the statute provides for a procedure for such review or for a judicial remedy, *it excludes any common law or equitable procedure* to the extent such statutory provisions are adequate in protecting and preserving such substantive rights guaranteed by the constitution, the statutes or general principles of law. Such statutory procedure must be followed at least to the extent of the remedy available before resort is made to any common law or equitable remedy. (emphasis supplied)

*Also see Ballman v. Duffecy* (1952), 230 Ind. 220, 102 N.E.2d 646; *Joseph E. Seagram & Sons v. Board of Com'rs* (1943), 220 Ind. 604, 45 N.E.2d 491; *State ex rel. White v. Hilgemann, Judge* (1941), 218 Ind. 572, 34 N.E.2d 129; *Warren v. Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399.

It is often stated that if the administrative remedy has not been exhausted, a court does not have jurisdiction to take action. *State ex rel. Indianapolis Water Co. v. Boone Circuit Court* (1974), 261 Ind. 583, 307 N.E.2d 870; *Indianapolis Power & Light Co. v. Highland Realty Co.* (1970), 253 Ind. 637, 256 N.E.2d 394; *State ex rel. Public Service Com'n v. Marion Circuit Court* (1961), 242 Ind. 145, 177 N.E.2d 397; *Amburgey v. Miller* (1977), Ind.App., 362 N.E.2d 869; *Decatur County R. E. M. C. v. Public Service Co. of Indiana* (1971), 150 Ind.App. 193, 275 N.E.2d 857. *See also Indiana Bell Telephone Co. v. Friedland* (1978), Ind.App., 373 N.E.2d 344.

2. Errors made by the administrative agency may be discovered and cured in the course of its action. *McShane, supra.*

The so-called "exclusive remedy" doctrine was recently challenged in *Paynter, supra*, a case in which the Supreme Court considered and rejected an attempt, similar to the one before us, to by-pass the administrative review machinery of the Act.

The operator of a health care facility was notified to appear before the Indiana Health Facilities Council to determine if she was operating without a license. Prior to the scheduled hearing she sought and obtained a Writ of Prohibition in a trial court restraining action by the agency, claiming violation of her constitutional rights under the Fifth[3] and Fourteenth Amendments[4] of the United States Constitution.

In ruling that the trial court wrongfully interferred with the administrative process the court emphatically embraced the necessity of exhaustion of administrative remedy:[5]

A determination by an administrative board that has authority to act in a given case may be subjected to judicial review under the Administrative Adjudication Act, as may findings of fact. *Ind.Code 4–22–1–14 (§ 14). The Respondents have not shown this remedy at law is inadequate.* No Fifth Amendment rights are jeopardized. No savings in the cost or time of litigation have been demonstrated.

*The statute here affords an adequate administrative procedure and review. It is fundamental that no one is entitled to judicial relief until the prescribed admin-*

*istrative remedies have been exhausted.* (emphasis supplied)

344 N.E.2d at 851.

■ Thus, the explicit terms of the Act and the last word of the Supreme Court in *Paynter*, leads us inevitably to the conclusion that unless Dr. Thompson can demonstrate he is entitled to equitable or extraordinary relief, he is limited by the Act to the prescribed procedure for judicial review under Section 14.

Our conclusion is not altered by the Supreme Court's decision, *Wilson v. Review Board of Indiana Employment Security Division*, Ind., 385 N.E.2d 438 (1979), a case arising under the Indiana Employment Security Act, Ind.Code 22–4–1–1 et seq., and not under the AAA.

The provision relating to appeals under the Indiana Employment Security Act is Ind.Code 22–4–17–12 which, unlike the AAA fails to contain even a hint that the procedure provided is exclusive:

Any decision of the review board shall be conclusive and binding as to all questions of fact. Either party to the dispute, the board or the director *may*, within thirty [30] days after notice of intention to appeal as herein provided, *appeal the decision to the Appellate Court (Court of Appeals)* for errors of law under the same terms and conditions as govern appeals in ordinary civil actions. (Emphasis supplied)

Also, in *Wilson* the controversy involved a legal question only, all factual issues having been resolved through the *completion* of the administrative hearing process so that the

---

3. Relator claimed that violation of Moore's Fifth Amendment right to remain silent constituted an irreparable harm sufficient to invoke equitable relief.

4. Like Dr. Thompson, relator claimed that it was prejudicial for the Attorney General to serve in a prosecutorial and advisory role, a claim the court specifically rejected. *Paynter, supra*, at 850.

5. Justice Hunter in his concurring opinion in *Paynter* stated:
    . . ., even if the outcome (of the administrative hearing) is not in her favor, she will

have developed a factual record to support her claim that the Health Facilities Council, under the statutory arrangement assigning preliminary investigative functions to it, is not sufficiently impartial to satisfy the Due Process Clause.

\* \* \* \* \* \*

For the reasons stated above, I *concur* with the majority *that the claim presented here is properly reviewable through the machinery of the Administrative Adjudication Act and not by way of this original action.* (emphasis supplied)

344 N.E.2d at 852.

courts could resolve the entire controversy between the litigants.

The Supreme Court in *Wilson* made no reference to *Paynter*, which prompts an inference that they, like us, believe Wilson to be distinguishable from cases arising under the AAA.

### B. INJUNCTIVE RELIEF

#### (1) Adequate Remedy At Law.

■ In order to qualify for equitable relief Dr. Thompson must show great and irreparable injury or damage and that he has no adequate remedy at law. *City of Gary, Lake County v. Ayers* (1968), 251 Ind. 193, 238 N.E.2d 17; *Southside Motor Coach Corporation v. McFarland et al.* (1934), 207 Ind. 301, 191 N.E. 147. *See also Owens v. Downs* (1951), 121 Ind.App. 294, 98 N.E.2d 914.

That Section 14 (the review procedure) does provide an adequate legal remedy to consider the constitutional issues raised by Dr. Thompson has already been decided by *Paynter* . . . "The Respondents have not shown that this remedy at law is inadequate." Dr. Thompson can assert by way of judicial review that the Board's action is "contrary to constitutional right, power, privilege or immunity;" (Section 14).

#### (2) Irreparable Harm.

■ But has he been irreparably harmed? His claim is that his professional reputation would be irreparably harmed if he is forced to litigate the constitutional issues at the conclusion of the administrative process.

In *Downing v. Board of Zoning Appeals of Whitley County* (1971), 149 Ind.App. 687, 274 N.E.2d 542, this Court expressed serious reservations as to whether one could ever suffer irreparable injury prior to a final action by an agency:

> Generally, judicial review is denied for lack of finality if an action by an administrative agency is only anticipated.

149 Ind.App. at 690, 274 N.E.2d at 544.

To the same effect is *Indiana Alcoholic Beverage Com'n v. McShane* (1976), Ind. App., 354 N.E.2d 259.

Final or not, the overwhelming majority rule is that harm to professional reputation is not the kind of irreparable injury that forms the basis for equitable relief. Bad publicity generated by revocation of a license is not deemed to be the type of irreparable injury contemplated, and injunctions have been almost uniformly denied to professionals seeking to stop license revocation hearings because of damage to their reputation. *See Beckanstin v. Bradbury* (1958), 214 Ga. 27, 102 S.E.2d 486 (architect's license); *Baugher v. Walker* (1977), 47 Ill.App.3d 573, 5 Ill.Dec. 939, 362 N.E.2d 410 (pharmacists); *Allen v. Louisiana Board of Alcoholic Beverage Control* (1962), (La.App.), 146 So.2d 662 (liquor license); *Feinblum v. Louisiana State Board of Optometry Examiners* (1957), (La. App.), 97 So.2d 657 (optometrist); *State v. Ingham County Circuit Judge* (1972), 41 Mich.App. 700, 200 N.W.2d 774 (car dealer); *Bridges v. State Board of Registration for Healing Arts* (1967), (Mo.App.), 419 S.W.2d 278 (physician); *Texas State Board of Examiners in Optometry v. Carp* (1951), 162 Tex. 1, 343 S.W.2d 242 (optometrist).

Typical is *Pye v. Commonwealth* (1977), 29 Pa.Cmwlth. 545, 372 A.2d 33:

> Prospective parties to administrative agency actions may not bypass that process and challenge the prospective action directly in the courts. The alleged irreparable harm—that of adverse publicity—is a risk encountered by all parties to legal proceedings and is not alone sufficient to invoke the remedy of injunction. (citations omitted)

Dr. Thompson has not demonstrated entitlement to extraordinary equitable relief. As the trial court properly found, he is limited to the judicial review procedure of Section 14. His position is unlike the Plaintiff in *Indiana Education Employment Relations Board v. Benton Community School Corp.* (1977), Ind., 365 N.E.2d 752, who had no judicial review available because of the terms of the collective bargaining statute under which it was proceeding.

### C. DECLARATORY JUDGMENT

Again seeking a forum other than the administrative process to hear constitution-

al issues Dr. Thompson has sought refuge under the ramparts of the Indiana Declaratory Judgment Act, Ind.Code 34–4–10–2, which provides in relevant part:

> Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute, . . . and obtain a declaration of rights, status or other legal relations thereunder.

The guide for application of the Act is Ind.Code 34–4–10–12:

> This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered.

However, liberal construction does not mean "carte blanche." A declaratory judgment is said to be proper if another legal remedy exists, only "where it is appropriate". Ind.Rules of Procedure, TR. 57.

■ As a general rule, an action for a declaratory judgment will be dismissed if there is pending another action or proceeding with some of the same parties which may adjudicate some of the identical issues involved in the declaratory action. *Fegaro v. South Central Bell* (1971), 287 Ala. 407, 252 So.2d 66; *Mid-State Construction Co. v. Means* (1968), 245 Ark. 691, 434 S.W.2d 292; *Transamerica Insurance Co. v. Whitney National Bank of New Orleans* (1968), 251 La. 800, 206 So.2d 500; *Watson v. Dorsey* (1972), 265 Md. 509, 290 A.2d 530; *Berigan Bros. v. Growers Cattle Credit Corp. of Omaha* (1976), 182 Neb. 656, 156 N.W.2d 794; *Nelson v. Knight* (1968), 254 Or. 370, 460 P.2d 355; *Eisenhauer v. Williams* (Tex. Civ.App., 1976), 537 S.W.2d 336.

■ The propriety of declaratory relief must always be judged with reference to whether the issue in question is more properly resolved in another forum, *Hanes Corp. v. Millard* (1976), 174 U.S.App.D.C. 253, 531 F.2d 585. Declaratory relief has been denied if the declaratory judgment would not

fully resolve all the issues between the parties, e. g., *Sears Roebuck and Company v. Zurich Insurance Company* (1969, N.D.Ill.), 299 F.Supp. 518; or ". . . when the final judgment in the accrued action may in fact make the question raised in the declaratory judgment action moot." *Allstate Insurance Co. v. Mahan* (1969), 223 Tenn. 496, 448 S.W.2d 392, 393.

The courts have been reluctant to grant declaratory relief if the result is to bypass administrative procedure. *Verbecke v. Verbecke* (1958), 352 Mich. 632, 90 N.W.2d 489; *Adams v. Atlantic City* (1948), 26 N.J. Misc. 259, 59 A.2d 825; *Cha-Toine Hotel Apartments Bldg. Corp. v. Shogren* (1953, 7th Cir.), 204 F.2d 256. In *City of Cheyenne v. Sims* (1974), 521 P.2d 1347, 1350, the Wyoming Supreme Court, in affirming a dismissal of a declaratory judgment action to determine certain property tax-exempt prior to assessment, held: "Declaratory [relief] should not be used to usurp or replace specific administrative relief, particularly when the initial decision is committed to an administrative body."

■ However, the actual determination of whether the presence of another form of relief should justify a refusal to grant declaratory relief is within the trial court's discretion. *Allstate Ins. Co. v. Fisher* (1973), 31 Cal.App.3d 391, 107 Cal.Rptr. 251; *Textron, Inc. v. Wood* (1974), 167 Conn. 334, 355 A.2d 307; *Hampson v. State ex rel. Buckson* (1967) (Del.), 233 A.2d 155; *Harris v. State Bank & Trust Co. of Wellston* (1972), (Mo.) 484 S.W.2d 177; *Slosburg v. City of Omaha, supra; Equitable Leasing, Inc. v. Maguire* (1971), 36 A.D.2d 1020, 321 N.Y.S.2d 410; *C. H. Pitt Corp. v. Insurance Co. of N. America* (1969), 435 Pa. 381, 257 A.2d 857. Absent an abuse of that discretion the trial court's decision will be upheld. *Allstate Ins. Co., supra; Girard v. Miller* (1963), 214 Cal.App.2d 266, 29 Cal.Rptr. 359.

■ While Indiana courts have never considered the exact circumstances under which it might be an abuse of discretion for a trial court to deny declaratory judgment relief when an administrative remedy has not been exhausted, several relevant factors

in making such a decision emerge from the cases, here and elsewhere:

    a.) Use of the remedy which most completely resolves all the issues between the parties; *Hanes Corp., supra* ;

    b.) Whether the administrative remedy is adequate; *See Ind. Ed. Employment Relations Bd. v. Benton Community Schools* (1977), Ind., 365 N.E.2d 752;

    c.) Whether declaratory relief is necessary to prevent irreparable harm; *Beckanstin, supra* ;

    d.) Damage to the administrative process by allowing a declaratory judgment; *Downing, supra* ;

    e.) The extent of unnecessary delay resulting from allowing declaratory judgment.

We have already determined that Dr. Thompson would not be irreparably harmed by being confined to the prescribed administrative procedure and that such a remedy is adequate. Also, it is obvious that the declaratory judgment action can only resolve one aspect of the dispute between Dr. Thompson and the Board, his constitutional objections, leaving unresolved the misconduct charges against him.

This case exemplifies the potential for delay if resort is allowed to the courts for a declaratory judgment and an appeal taken to the appellate courts. It has been over three years since the complaint was filed against Dr. Thompson.

Allowing the Declaratory Judgment Act to be used as a vehicle to bypass the administrative process created by statute can seriously weaken the effectiveness of that process. Obviously years can be added to the administrative process before an administrative determination is made. Review of the process becomes piecemeal, an undesirable state of affairs resulting in unnecessary delay and duplication in a court system already burdened with demands exceeding its capacity to respond. The evils of piecemeal appeals are apparent. *See First Equity Security Life Ins. Co. v. Keith* (1975), Ind.App., 329 N.E.2d 45.

Thus by the criteria we have relied on, the conclusion is inevitable that under these circumstances the remedy of declaratory judgment was properly denied.

*Indiana Education Employment Relations Board v. Benton Community School Corp., supra,* is in no respect contrary to our conclusion. It allowed declaratory relief because there was no other remedy (i. e., no administrative review) available to the Benton Community School Corp. The discussion there of the exception made actually serves to revitalize the principle that the judicial review mechanism of the Act must be followed. *Also see Warren v. Indiana Telephone Co., supra.*

The trial court properly dismissed Dr. Thompson's action seeking declaratory and injunctive relief.

Affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring:

I express a degree of doubt that the provision of I.C. 4–22–1–14 which authorizes judicial review of an administrative "order, decision or determination" if "[c]ontrary to constitutional right, power, privilege or immunity", was intended to embrace a constitutional attack upon the statutory authority for the administrative agency to act at all, as opposed to an attack upon certain decisions which are infected by unconstitutional procedures or acts which occur during the exercise of otherwise valid authority or power. A challenge to the underlying authority of the agency itself is quite different in nature and scope from a challenge to the manner in which valid authority is exercised.

In the case before us the majority observes that "the declaratory judgment action can only resolve one aspect of the dispute between Dr. Thompson and the Board, his constitutional objections, leaving unresolved the misconduct charges against him." (p. 51). If the sole issue involved unconstitutionality of I.C. 25–22.5–6–2 on

its face, I would hold the declaratory judgment action to be an appropriate remedy without resort to further proceedings within the administrative review process. See *State ex rel. City of South Bend v. St. Joseph Superior Court* (1958) 238 Ind. 88, 148 N.E.2d 558; *State ex rel. City of South Bend v. Marckle* (1939) 215 Ind. 74, 18 N.E.2d 764.