SCOTT COUNTY FEDERATION OF
TEACHERS, Defendant-Appellant,

v.

SCOTT COUNTY SCHOOL DISTRICT
NO. 2 Classroom Teachers
Association, Plaintiff-Appellee.

No. 49A02–8603–CV–114.

Court of Appeals of Indiana,
First District.

Aug. 20, 1986.

Barry A. Macey, Nora L. Macey, Segal & Macey, Indianapolis, for defendant-appellant.

Janet C. Knapp, Richard J. Darko, Tabbert, Cremer & Capehart, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Scott County Federation of Teachers (Federation) appeals a preliminary injunction issued by the trial court against the Indiana Education Employment Relations Board (IEERB). We reverse.

## FACTS

The Scott County School District No. 2 Classroom Teachers Association (Association) is a school employee organization. In 1983, it was certified by the IEERB as exclusive representative of the school employees of Scott County School District No. 2 for purposes of collective bargaining and discussion.

The Federation is a rival school employee organization. On August 23, 1985, the Federation filed a "Unit Determination and/or Representation Petition" with the IEERB which stated that twenty percent of the school employees in the bargaining unit represented by the Association wished to be represented instead by the Federation. Following procedures established by IEERB Regulations, 560 Ind.Admin.Code 1–2–1 through 15, an IEERB hearing officer, after investigation, determined that "a question of representation exists" and ordered a secret ballot election pursuant to 560 I.A.C. 1–2–9 to resolve the question.

On October 15, 1985, an election was held in which all school employees within the designated bargaining unit were eligible to vote. The ballot included three choices: (1) the Federation, (2) the Association, and (3) No Representation. A tally of the votes yielded the following results:

| | | |
|---|---|---|
| (1) | Federation .............. | 70 |
| (2) | Association ............. | 68 |
| (3) | No Representation ....... | 2 |

Since this vote did not render a clear majority of eligible voters for any of the choices, the IEERB ordered a runoff election pursuant to 560 I.A.C. 1–2–10.

The IEERB rules provide that the runoff ballot "shall provide for a selection between the *two* choices receiving the largest and second largest number of votes." 560 I.A.C. 1–2–10 (emphasis added). However, Indiana Code section 20–7.5–1–10(d) requires that "[i]n *any* election the ... ballot shall contain ... a provision for choosing 'no representation ...'" in addition to the names of rivaling organizations. (Emphasis added). As a result, the administrative staff of the IEERB always included the choice of "no representation" on runoff ballots, even if this resulted in three choices on the ballot which was contrary to 560 I.A.C. 1–2–10. Since no party had ever before objected to the longstanding practice of including "no representation" as a third choice on runoff ballots, the question of the propriety of that practice had never been considered by the IEERB.

On October 29, 1985, the runoff election yielded the same results as the first election. On November 8, 1985, the IEERB hearing officer overruled the Federation's objection to the inclusion of the third choice of "no representation" on the runoff ballot. Because the runoff failed to yield a majority for either teacher organization, the IEERB, through its hearing officer, declined to certify an exclusive representative and dismissed in part the Federation's petition for representation. The Federation sought review of this decision. On December 19, 1985, the IEERB granted the Federation's petition and ordered another runoff election, declaring the first runoff to be a nullity since more than two choices were on the ballot. This facially conflicted with 560 I.A.C. 1–2–10 which provides, "Only one runoff election shall be held pursuant to this section."

Prior to the third election, the Association filed suit in the Marion County Superior Court. On March 7, 1986, the trial court issued a preliminary injunction enjoining the IEERB's third election pending a trial on the merits to determine whether a third election is proper and whether a runoff ballot should include the choice of "no representation."

## ISSUE

Did the Association have to exhaust all administrative remedies in order to obtain a preliminary injunction enjoining a representation election if it could not show, *inter alia*, that it would be irreparably harmed by having to participate in the election?

## DISCUSSION AND DECISION

Traditionally, a person is not entitled to invoke judicial action for an alleged injury unless the prescribed administrative remedies have been exhausted. *Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; *Board of School Commissioners v. Eakin* (1983), Ind., 444 N.E.2d 1197, 1201; *State ex rel. Paynter v. Marion County Superior Court, Room No. 5* (1976), 264 Ind. 345, 344 N.E.2d 846. An excellent summary of the reasons favoring the exhaustion doctrine is found in *McKart v. United States* (1969), 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194. In Indiana, the doctrine, *inter alia*, is codified in the Administrative Adjudication Act, Indiana Code sections 4–22–1–1 through 4–22–1–30. Section 1 of the Act provides:

"It is the intent to establish a uniform method of administrative adjudication by all agencies of the State of Indiana, to provide for due notice and an opportunity to be heard and present evidence before such agency and to establish *a uniform*

*method of court review of all administrative adjudication."*

Ind.Code § 4–22–1–1 (emphasis added). Ind.Code § 4–22–1–14 establishes a method for judicial review intended by the legislature to be the exclusive recourse for judicial review of administrative actions. *Thompson v. Medical Licensing Board* (1979), 180 Ind.App. 333, 389 N.E.2d 43, *cert. denied,* 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160. "The thrust of the Act is that the exclusive path to the courts is *by review.* The administrative process is not to be disrupted and delayed." *Id.* at 339, 389 N.E.2d at 47 (emphasis in original). Our supreme court succinctly stated this concept as follows:

> "[W]here the statute provides for a procedure for such review or for judicial remedy, it excludes any common law or *equitable procedure* to the extent such statutory provisions are adequate in protecting and preserving such substantive rights guaranteed by the constitution, the statutes or general principles of law. Such statutory procedure must be followed at least to the extent of the remedy available before resort is made to any common law or *equitable remedy."*

*Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 83, 131 N.E.2d 308, 313 (emphasis added). However, this review procedure may be invoked only if the agency action is a "final order". *State ex rel. Calumet National Bank v. McCord* (1963), 243 Ind. 626, 189 N.E.2d 583. Thus, if the IEERB's order for the third election was a final order, the Association erred by not petitioning for review pursuant to the dictates of Ind.Code § 4–22–1–14. *South Bend Federation of Teachers v. National Education Association* (1979), 180 Ind.App. 299, 307, 389 N.E.2d 23, 28, *trans. denied.*

■ This court defined "finality" in *Downing v. Board of Zoning Appeals* (1971), 149 Ind.App. 687, 274 N.E.2d 542. " 'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. ... Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Id.* at 691, 274 N.E.2d at 544. In the case under consideration, the act which finalizes the election procedure is certification of the election and of the exclusive representation by the IEERB. 560 I.A.C. 1–2–14. *Cf. South Bend,* 389 N.E. at 29. The Association seeks to thwart the IEERB process prior to the election. As we said in *South Bend,* "[T]he Board's order leaves much 'further to be accomplished.' The rights of the parties remain undetermined and will remain undetermined until after an election is held." *Id.* Therefore, we hold that the IEERB's order for a third election was not a "final order" so that the Association's failure to seek review pursuant to Ind. Code § 4–22–1–14 is not fatal.

■ Even though the Association was not required to follow the Act's review provisions, the Association cannot seek judicial review unless it can persuade us that it did not have to exhaust its administrative remedies. "To be excepted from this exhaustion requirement [the party] must demonstrate *extraordinary circumstances* which show that his remedy under the AAA is inadequate." *State ex rel. Basham v. Medical Licensing Board* (1983), Ind.App., 451 N.E.2d 691, 694 (emphasis added).

Although Indiana courts have often talked of "exceptions" to the exhaustion requirement, we find that our courts actually have undertaken a balancing process. As Professor Davis has stated, "[The courts] weigh the reasons pulling in each direction and decide whether requiring exhaustion is desirable." 4 K. Davis, *Administrative Law Treatise* § 26:1 at 414 (2d ed. 1983). The major factors affecting the analysis are as follows:

> "Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial competence, the futility of

exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy.

"Pulling toward requirement of exhaustion are combinations of such factors as need for factual development, importance of reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors."

Davis, § 26:1 at 414–15. *See also Wilson v. Board of Indiana Employment Security Division* (1979), 270 Ind. 302, 305, 385 N.E.2d 438, 441, *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. We hold that the factors in favor of exhaustion outweigh the factors counseling a departure from the exhaustion requirement.

■ We agree with the Association that the factual record is complete. The only question is one of law, *i.e.,* whether the IEERB can nullify the first runoff election and order a third election with only two choices on the ballot. This is a very strong factor for the Association since purely legal questions are particularly suited for the judiciary. However, we cannot accept the Association's argument that this is enough of itself to warrant a retreat from the exhaustion requirement. The issue of whether the question is one of fact or law is just one factor the court must consider. *Cf. Uniroyal, Inc. v. Marshall* (7th Cir. 1978), 579 F.2d 1060 (refusal to create per se exception for purely legal issue). Thus, we will consider other factors to reach our decision.

The Association next alleges irreparable harm in the event it must participate in the third election. For support, the Association relies upon *South Bend Federation of Teachers v. National Education Association* (1979), 180 Ind.App. 299, 389 N.E.2d

23, *trans. denied.* However, we find *South Bend* so factually intensive that we are not persuaded that it justifies the Association's position. In *South Bend,* the NEA and the Association entered into an election agreement in 1972 outlining election procedures for determining which of the two rival organizations would be the bargaining agent for the teachers. The agreement provided for an election to be held in 1972 and for procedures to challenge the victor thereafter. The agreement, however, covered only one challenge. After one challenge election, the agreement ceased to bind either party. The NEA won the 1972 election.

In 1973, our legislature enacted the Educational Employee Bargaining Act, Indiana Code sections 20–7.5–1–1 through 20–7.5–1–14, which delineated procedures for representation elections. Its requirements for a challenge are easier to satisfy than the terms of the 1972 agreement. In 1974, the IEERB certified the NEA as the exclusive representative based on the 1972 agreement and election. In 1977, the Federation challenged the NEA's continued representation. The challenge conformed with the Act but not with the 1972 agreement. The IEERB ruled that the 1972 agreement did not apply to elections other than the 1972 election so that the relaxed requirements of the Act governed the 1977 challenge. The NEA sought and obtained a preliminary injunction enjoining the IEERB from further action until the terms of the 1972 agreement had been complied with.

This court upheld the preliminary injunction. After holding that the IEERB's order was not a "final order," the court held that the NEA did not have to exhaust its administrative remedies prior to obtaining an injunction. After stating the general requirement of exhaustion, the court said, "However, under certain exceptional circumstances, such as futility of exhaustion or certainty of irreparable harm, the exhaustion requirement is relaxed." *Id.* at 310, 389 N.E.2d at 30. Chief Judge Buchanan, writing for the court, held that the

NEA would be irreparably harmed if it had to go through with the election.

"The harm NEA–South Bend would suffer if it were to lose the election is apparent—it would lose its status as exclusive representative and would no longer be entitled to bargain for the teachers. However, the evidence shows that NEA–South Bend would suffer *irreparable* harm even if it should win the election. To participate in an election, NEA–South Bend would have to expend $14,500, an amount which would exceed the normal cost of administrative litigation.... Also even if NEA–South Bend were to win the election, its contract rights under the 1972 Election Agreement would be permanently impaired."

*Id.* at 312, 389 N.E.2d at 31 (emphasis added). The court elaborated on how the NEA's contractual rights would be effected as follows:

"The 1972 Election Agreement provides *inter alia* procedures to be used to challenge the winner of the 1972 election. Once a challenge election is held, however, the 1972 Election Agreement will cease to bind the parties, and any further challenges would be governed by the less stringent provisions of the Act. Therefore, if NEA–South Bend is forced to participate in an election, even if victorious, its position as exclusive bargaining agent would be less secure than it would have been if the 1972 Election Agreement were still in force because it could be challenged if 20% of the unit signed a petition (requirement in the Act) instead of 30% (requirement in the 1972 Election Agreement)."

*Id.* at 313, 389 N.E.2d at 32.

Thus, the NEA in *South Bend* would have been irreparably harmed for two reasons. First, it would have to expend $14,500 to participate in the election. Second, it would lose its contractual rights under the 1972 agreement. Both harms would result regardless of the election's outcome.

The NEA in *South Bend* also would have been harmed if it lost the election by losing its status as the exclusive bargaining representative for the teachers. This, however, would not have been an irreparable harm. 560 I.A.C. 1–2–15 provides for a review by the full IEERB after an election and certification. The petition for review may seek the withdrawal of certification along with other remedial and corrective action. Thus, if the NEA in *South Bend* would have lost the election and been decertified, that harm could have been reversed by the IEERB subsequent to the election.

The case under consideration is distinguishable from *South Bend.* First, the Federation has posted a bond to reimburse the Association for election expenses if the Association would win the election. Second, the Association would not lose any contractual rights by participating in the second runoff election unlike the NEA in *South Bend.* Thus, the only two elements of irreparable harm in *South Bend* are not present here.

■ The only similarity in the cases is that the Association could lose its representational status by participating in the election. But, as discussed above in light of *South Bend,* this is not an irreparable harm. If the Association wins the election, it would suffer no harm whatsoever. If it should lose the election, it can appeal its decertification to the full IEERB, claiming that the election was not authorized or that the choice of "no representation" should have been included on the ballot. The Association could then seek judicial review pursuant to Ind.Code § 4–22–1–14 if it is dissatisfied with the IEERB's decision. In short, the case at bar lacks the "unusual circumstances" present in *South Bend.* Therefore, we cannot accept the Association's claim of irreparable harm.

■ Federal labor cases, while not directly on point, are sufficiently similar to support our conclusion that the Association must exhaust its administrative remedies. In *Calhoon v. Harvey* (1964), 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190, union members attempted to enjoin a union election. They alleged that the union's bylaws and

constitution infringed their right to nominate candidates. The U.S. Supreme Court held that since the relevant statute provided an exclusive remedy after an election, the members must exhaust all administrative remedies, one step of which was the filing of a complaint with the Secretary of Labor. As the Court said,

"Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts."

*Id.* at 140, 85 S.Ct. at 296, 13 L.Ed.2d at 194–95. Thus, the Court held that the district court had no jurisdiction to issue an injunction. *Cf. Local 82, Furniture Moving Drivers v. Crowley* (1984), 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (injunction against ongoing union election inappropriate due to Secretary of Labor's special knowledge and discretion). As in *Calhoon* and *Crowley,* this court opines that the third election should not be disrupted so that the IEERB can exercise its expertise and special knowledge of the issues involved.

Other factors persuade us that the Association should be required to exhaust its administrative remedies. The Association has not alleged that it would be futile in its efforts to petition the IEERB if it would lose the election. Indeed, the IEERB should be given the chance to correct its own errors if it has made any. The Association has not shown that the IEERB clearly lacked jurisdiction or that the IEERB's position on the third election with two choices is clearly illegal. Furthermore, judicial resources are conserved by letting the administrative process run its full course. Finally, exhaustion will avoid unnecessary interference with the agency's procedures.

■ If a party fails to exhaust its administrative remedies, a trial court lacks jurisdiction to issue an injunction. *Indiana*

*Civil Rights Commission v. Meridian Hills County Club* (1976), 171 Ind.App. 341, 357 N.E.2d 5. Since the Association failed to show that the factors in favor of relaxing the exhaustion requirement outweighed the factors supporting exhaustion, the trial court did not have jurisdiction to issue a preliminary injunction enjoining the third election.

Reversed.

ROBERTSON, P.J., and NEAL, J., concur.