**FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant-Appellant,**

v.

**Nicholas DERCACH and Marcia Dercach, Plaintiffs-Appellees.**

No. 3–1081A263.

Court of Appeals of Indiana, Third District.

June 29, 1983.
Rehearing Denied Sept. 7, 1983.

Patricia O'Brien Cotter, South Bend, for defendant-appellant.

Darrell J. Hiatt, Elkhart, for plaintiffs-appellees.

GARRARD, Judge.

On October 10, 1977 Nicholas Dercach (Dercach) was involved in a collision while driving his dump truck on a Michigan highway. Dercach's truck was insured by Farm Bureau Mutual Insurance Co. (Farm Bureau). Farm Bureau secured an estimate of repair cost from an adjuster and selected a garage in Elkhart, Indiana known as I.N.E., Inc. (INE) to do the work. On November 17 Farm Bureau notified Dercach that work could commence as soon as he signed a repair order, which he did on November 30.

Dercach filed his original complaint against Farm Bureau on January 25, 1978. In it he alleged that Farm Bureau had delayed the return of his truck by refusing to authorize repairs and by refusing to acknowledge responsibility for repair costs.

INE completed an initial phase of repairs on June 9, but Dercach requested that additional, previously unauthorized work be done. Farm Bureau approved additional repairs on August 16. Having received no payment for any of its work, INE on August 22 filed notice of its intention to hold a garageman's lien and asserted that Dercach's truck would be sold at public auction if the repair bill was not paid. On September 28, approximately eleven and one-half months after the accident, Farm Bureau sent payment to INE and Dercach claimed his truck.

Dercach amended his complaint on December 23, 1980, alleging that the truck was not properly repaired and that Farm Bureau had refused to pay for repairs in an effort to exploit its superior bargaining position to obtain from Dercach a release from future liability. He sought $3,000 for additional repairs, $1,000 per week for loss of use, and $100,000 for mental anguish and punitive damages.

At a pre-trial conference held on April 22, 1981 Farm Bureau filed its motion for summary judgment on all elements of Dercach's complaint. The trial judge took the motion under advisement and informed Dercach that he could have until April 27, the first day of trial, to oppose it. On that day Dercach filed an affidavit in opposition to Farm Bureau's motion. The trial judge then stated that he would withhold judgment with regard to punitive damages and that he would permit the issue to go to the jury. He also stated that he would take the issue of loss of use under advisement until after evidence had been presented. A jury trial followed against Farm Bureau and co-defendant Michael P. Barnes (Barnes), administrator of the estate of the other driver involved in the collision.

On April 29, at the close of Dercach's case, Farm Bureau filed its motion for judgment on the evidence on the issue of punitive damages. The motion was denied. At the close of all evidence, Farm Bureau moved for judgment on the evidence on the issues of mental anguish, punitive damages, and loss of use. The motion was granted as to mental anguish but denied as to the other issues. On April 30 the jury returned its verdicts in favor of Dercach and against Farm Bureau in the amounts of $12,000 for

loss of use and additional repairs and $25,000 for punitive damages.

We restate Farm Bureau's assigned errors as follows:

1. Did the court err in permitting a witness to read in evidence an affidavit he had given in 1978?

2. Did the court err in denying Farm Bureau's motion for continuance or for separate trials?

3. Did the court err in denying judgment on the evidence as to damages for loss of use?

4. Was the award of punitive damages contrary to law?

5. Did the court err in denying Farm Bureau subrogation in the judgment against the other driver?

### I.

■ During the trial, the court permitted witness Leslie Hively to read into evidence the contents of an affidavit he had signed on June 28, 1978. Farm Bureau objected to Hively's use of the affidavit on the ground that it did not refresh his memory and that he testified from it rather than from personal memory.

At all relevant times Hively was an employee of INE. On direct examination by Dercach's attorney, Hively was shown two general release forms that released Farm Bureau from any and all future claims arising from the October 10 accident. With regard to each release Hively testified that a representative of Farm Bureau instructed him that INE would have to secure Dercach's signature before Farm Bureau would pay the repair bill.

When Hively was unable to specifically identify this representative he was shown his affidavit, in which he stated that it was Charles E. Ripley, regional claims manager for Farm Bureau, who had given him the "no release—no payment" instruction. However, even though Hively testified that he believed the statements contained in his affidavit reflected his true belief on the date he made them, he admitted that his memory was not refreshed regarding the specific identity of the Farm Bureau representative.

While we agree that this was not an instance of present memory refreshed, *see DeArmond v. Carter* (1956), 127 Ind.App. 34, 134 N.E.2d 239, the document was admissible as past recollection recorded. *Gee v. State* (1979), Ind., 389 N.E.2d 303, 309.

### II.

Farm Bureau next contends that the trial court erred in denying its motions for continuance or separation of trials, which motions were made at pre-trial conference and on the first morning of trial. Farm Bureau believes that it was entitled to a continuance because the court (1) permitted Dercach to add a new exhibit to the list of exhibits contained in the pre-trial order, (2) signed the pre-trial order, and (3) ruled on Farm Bureau's motion for summary judgment, all immediately before trial. Because these actions were taken so late, Farm Bureau says it was unable to prepare an adequate defense.

■ The granting or denial of a motion for continuance lies within the trial court's discretion, and the moving party bears the burden of establishing good cause for postponing trial. Indiana Rules of Procedure, Trial Rule 53.4; *Clark v. Clark* (1980), Ind. App., 404 N.E.2d 23, 36. We review a trial court's exercise of discretion in ruling on a motion for continuance only to determine whether there has been an abuse of discretion *Hinds v. McNair* (1980), Ind.App., 413 N.E.2d 586, 609. Further, we will not disturb a trial court's denial of a motion for continuance unless the movant can demonstrate that he was prejudiced by the denial. 413 N.E.2d at 609.

■ We do not find good cause and prejudice in the present case. Farm Bureau was itself responsible for the trial court's delay in signing the pre-trial order and ruling on the summary judgment motion. Farm Bureau filed it smotion for summary judgment only five days before trial was scheduled to commence. It appears to us that the trial court's decision to receive the

motion, even though TR 56(C) provides that such a motion shall be served at least ten days before trial, but to give Dercach the maximum time possible before trial began in which to respond was quite fair to Farm Bureau under the circumstances. Neither was Farm Bureau prejudiced by the addition of a new exhibit to the pre-trial order. This exhibit, a copy of a check containing on its reverse side a general release, raised no new issue of which Farm Bureau was unaware and does not appear to have been critical to Dercach's case.

Dercach's original complaint was filed over three years before trial was held, and his second amended complaint preceded trial by sixteen months. Farm Bureau was aware during this period of the claims against which it might need to defend. Diligent research and discovery procedures would have rendered it prepared. Additionally, the vigorous defense Farm Bureau mounted at trial belies its argument that it was unable to adequately prepare because of the actions taken immediately before trial.

■ Farm Bureau also argues that it was entitled to a separation of its case from that of Dercach against co-defendant Barnes. Farm Bureau reasons that, although the trial court granted Farm Bureau's motion for summary judgment on the issue of mental anguish, it permitted psychiatrists to testify against Barnes that part of Dercach's mental anguish stemmed from his perception of Farm Bureau's conduct regarding his truck. Farm Bureau feared that it would be prejudiced by this testimony and that this prejudice would be reflected in the jury's award of punitive damages.

Trial Rule 42(B) governs motions for separate trials and provides that the granting of such a motion is discretionary. *Accord Newton v. Yates* (1976), 170 Ind.App. 486, 353 N.E.2d 485, 488. As with a ruling on a motion for a continuance, a trial court's ruling on a motion for separation of trials will not be reversed unless it constitutes an abuse of discretion. *Arnold v. Dirrim*

(1979), Ind.App., 398 N.E.2d 426, 436. The *Arnold* court also observed that:

"In ruling on the motion, the trial court must necessarily balance the interests of convenience and economy against the likelihood of substantial prejudice to the defendant's case. Economy of time, money and effort requires, if practicable, that the entire controversy be determined by one trial. It is the policy of the law to limit the number of trials as far as possible."

We conclude that Farm Bureau has again failed to demonstrate prejudice that would require reversal. Farm Bureau's assertion that the jury may have awarded damages to Dercach for mental anguish under the guise of punitive damages invites us to engage in pure speculation. Farm Bureau has presented us with no reason to believe that this actually occurred. To accept Farm Bureau's argument we woul dhave to presume that the jury blatantly disregarded the trial court's unequivocable instruction that as a matter of law Dercach could recover no damages from Farm Bureau for mental anguish. Farm Bureau has presented no evidence that would justify such a conclusion.

The trial court did not err in denying Farm Bureau's motions for a continuance or separation of trials.

### III.

Farm Bureau argues the trial court erred in denying its motion for judgment on the evidence as to damages for loss of use.

■ It is the general rule in Indiana that damages for loss of use are measured by fair rental value but may be measured by lost profits where the profits are ascertainable. *Maddox v. Yocum* (1944), 114 Ind. App. 390, 52 N.E.2d 636. Farm Bureau contends that the evidence at trial was such that a verdict on loss of use could only be based on speculation and conjecture and therefore the issue should have been taken from the jury. We disagree.

■ It is true, of course, that a jury may not award damages on the mere basis of conjecture and speculation. *Stoneburner v.*

*Fletcher* (1980), Ind.App., 408 N.E.2d 545. Yet lost profits need not be proved with mathematical certainty. *Uebelhack Equip., Inc. v. Garrett Bros., Inc.* (1980), Ind.App., 408 N.E.2d 136. If the evidence is sufficient to enable the jury to make a fair and reasonable determination, the objection of uncertainty is not available. *The Kroger Co. v. Haun* (1978), Ind.App., 177 Ind.App. 403, 379 N.E.2d 1004.

■ Dercach testified to his employment experience with the truck. He testified his hourly rate for the truck was approximately $16.60 and he testified to his expenses of operation of about $200 per week. In addition the jury could have attributed 43 weeks lost use to Farm Bureau. We cannot say there was error in their award of $12,000 for lost use and additional repairs to the truck. *Kroger, supra.*

### IV.

■ Farm Bureau next contends the award of punitive damages was contrary to law. Pursuant to our Supreme Court's recent decision in *The Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349 we agree. In *Travelers* the court stated:

> "[P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing."

442 N.E.2d at 362.

Accordingly, the court adopted the standard that punitive damages should be allowable only upon proof under a standard of clear and convincing evidence.

We recognize that the jury's verdict in this case was returned more than a year before *Travelers* was decided in December 1982. Moreover, there was no objection to the instruction which permitted punitive damages to be awarded upon a simple preponderance of the evidence.

On the other hand, in the area of criminal law it has long been recognized to be within the province of the court to apply a new rule of law retrospectively and that a change in the law will generally be given effect to cases that are still on direct review. *Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

Punitive damages are not awarded as compensation for injury to a party; they are imposed to punish a wrongdoer and deter future misconduct. *School City of East Chicago v. East Chicago Federation of Teachers* (1981), Ind.App., 422 N.E.2d 656; *Nate v. Galloway* (1980), Ind.App., 408 N.E.2d 1317. Accordingly, as the court recognized in *Travelers,* 442 N.E.2d 362, the plaintiff has no entitlement in the nature of a property right to such damages. The law simply permits him to be the recipient where they are appropriately awarded. *Utopia Coach Corp. v. Weatherwax* (1978), Ind.App., 177 Ind.App. 321, 379 N.E.2d 518; *Glissman v. Rutt* (1978), 175 Ind.App. 493, 372 N.E.2d 1188; *Indianapolis Bleaching Co. v. McMillan* (1916), 64 Ind.App. 268, 113 N.E. 1019.

Considering the purposes and punitive nature of such awards and that the *Travelers* court applied the clear and convincing evidence rule retrospectively to the facts then before it, we conclude it is appropriate to apply *Travelers* to punitive damages award cases still on direct appeal at the time it was decided. It follows that the award of punitive damages before us must be reversed, and a new trial ordered on the issue of punitive damages. The jury may then, if appropriate, consider the question under the *Travelers* standard.

### V.

Finally, Farm Bureau argues that the court erred in refusing to grant it a subrogation right to recover from the judgment amount paid by the driver of the other vehicle the $6,661.57 it paid for repairs to Dercach's truck.

We are not persuaded that the court committed error.

We have heretofore held that in the absence of a clear contractual provision calling for *pro tanto* subrogation, the right to subrogation does not exist until the whole debt has been satisfied. *Willard v. Automobile Underwriters, Inc.* (1980), Ind. App., 407 N.E.2d 1192. Furthermore, subrogation is an equitable doctrine, *Hagerman v. Mutual Hospital Ins., Inc.* (1978), Ind. App., 175 Ind.App. 293, 371 N.E.2d 394. The right to subrogation may be waived or the insurer may be estopped from asserting it, and this may occur through unreasonable delay in satisfying its obligation under the policy. *National Mut. Ins. Co. v. Fincher* (1981), Ind.App., 428 N.E.2d 1386.

Here the form of the verdict does not permit us to say how much, if any, damages were awarded to Dercach for property damage to the truck. So there is no clear showing that by denying subrogation Dercach received a double recovery.

Farm Bureau clearly did not assist in Dercach's efforts to recover from the other driver, albeit because of the dispute between Farm Bureau and Dercach. That dispute, however, was occasioned by Farm Bureau's delay in satisfying its obligations to Dercach under the policy.

We cannot say that the court erred under the circumstances in denying the claim for subrogation.

The judgment for punitive damages is reversed and remanded. The remainder of the judgment is affirmed.

Affirmed in part, reversed in part.

HOFFMAN, P.J., and STATON, J., concur.