**MARATHON OIL COMPANY, successor by merger with Marathon Petroleum Company, Appellant–Plaintiff,**

v.

**Danny COLLINS, Appellee–Defendant.**

No. 80A02–0002–CV–111.

Court of Appeals of Indiana.

Feb. 2, 2001.

---

John M. Feick, Cross, Marshall, Schuck, DeWeese, Cross & Feick, P.C., Muncie, IN, Attorney for Appellant.

Patrick R. Ragains, Smith & Ragains, Anderson, IN, Attorney for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Marathon Oil Company, successor by merger with Marathon Petroleum Company, ("Marathon") appeals a judgment in favor of appellee-defendant Danny Collins ("Collins"). We affirm.

### Issues

Marathon raises four issues, which we consolidate and restate as follows:

I. Whether the statute of frauds should have precluded recovery of Collins' damages;

II. Whether the evidence supports a finding of constructive fraud; and

III. Whether the court ordered proper damage awards to Marathon and Collins.

### Facts and Procedural History

The facts most favorable to the judgment are that Collins wished to purchase real estate, which had formerly been used as a gas station, from Marathon. He told Marathon real estate representative Jerry Jansen ("Jansen") of his desire to purchase the Elwood property for $55,000.00 and utilize it for a used car lot. Although Jansen agreed on the price, he told Collins that Marathon preferred to lease the property before selling it so that certain work could be performed first. Accordingly, on May 29, 1990, Collins signed an eighteen-month lease, which began on June 1, 1990, and required Collins to pay Marathon $700.00 per month in rent and $1,400.00 as a security deposit. The lease also required that Collins repair the roof and driveway, replace the furnace, and alter the station's appearance so that it no longer resembled a Marathon station. Jansen

indicated that Marathon would grant Collins a five-month rent credit for the rehabilitation he performed; however, in the written lease, Marathon essentially waived only the first two months' rental payments.

Collins took possession of the property in June 1990, but did not occupy the building until August. He repaired the roof and driveway, replaced the furnace, covered the building with siding, and had various other improvements done in anticipation of purchasing the property. Collins had spent several thousand dollars on the property when Jansen again raised the issue of Collins' buying the property. Collins, who looked forward to finally purchasing the real estate, approached Star Bank ("Star") for a loan for the used car lot. Meanwhile, Collins received an unsigned purchase offer from Marathon. Star approved Collins for the loan, contingent upon an environmental inspection. Collins conveyed this information to Jansen, who thereafter never returned Collins' calls. Collins, who was behind in his rent, then argued with Marathon regarding the $2,100.00 (equal to three months' rent abatement), which he claimed Marathon had later promised to pay him in the form of a "knock off" of the purchase price and in partial reimbursement for the improvements.

On January 14, 1992, Marathon filed a complaint for ejectment against Collins, alleging that he was delinquent in rental payments, had breached the lease, and was unlawfully in possession of Marathon's real estate. On January 23, 1992, the Elwood fire chief and representatives from the Elwood Water Utility Department, the Indiana Gas Company, and Indiana Department of Environmental Management ("IDEM") evicted Collins from the proper-

ty. All utilities were disconnected. The property was found to be contaminated. Collins moved his business to a different, less desirable location. On February 21, 1992, Collins filed an answer and counterclaim alleging breach of the lease, breach of certain promises, and hidden environmental problems. Marathon responded that the lease constituted the entire written agreement between the parties and that the counterclaim failed to state a claim upon which relief could be granted. In late 1992, Collins went out of business and sold his remaining auto inventory at a loss. Collins repaid Star for the remainder of his loan by taking out a mortgage on his house.[1]

■ Collins filed a motion for partial summary judgment. On March 3, 1999, the court granted the motion, finding that the "tenancy was terminated as of 1/23/92." Marathon filed a motion to correct errors or in the alternative to issue an order that there is no just reason for delay and direct entry for the purpose of appeal. The court denied the motion and held a bench trial in August of 1999. By then, the property had been remediated, but had remained vacant for the majority of time since Collins' departure. Following trial, the parties submitted proposed findings of facts and conclusions of law. The court adopted Collins' proposal verbatim[2] and entered a $75,150.78 judgment in favor of Collins and a $1,800.00 judgment in favor of Marathon. Marathon filed a motion to correct errors upon which the court failed to rule within thirty days.

### Discussion and Decision

#### I. Statute of Frauds

Marathon challenges the court's finding that the statute of frauds does not apply to

---

1. Later, Collins' wife was added as a counterclaimant.

2. "[T]here is no error where the trial court requests the parties to submit proposed findings and then adopts verbatim one party's proposed findings over those of the other party." *Maloblocki v. Maloblocki*, 646 N.E.2d 358, 361 (Ind.Ct.App.1995). However, when a party prepares such findings he or she should take great care to insure that the findings are sufficient to form a proper factual basis for the ultimate conclusions of the trial court. *Id.* "Also, the trial court should remember that when it signs one party's findings, it is ultimately responsible for their correctness." *Id.*

the present case. Marathon asserts that the written lease encompassed the entire agreement between the parties and that there was no partial performance. As such, Marathon argues that the award of damages to Collins was improper.

We recently set forth the two-tiered standard of review we apply when a trial court makes findings of fact and conclusions thereon:

> We first determine whether the evidence supports the findings of fact and then whether those findings support the judgment. On review, we do not set aside the trial court's findings or judgment unless clearly erroneous. A finding is clearly erroneous when there is no evidence or inferences reasonably drawn therefrom to support it. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. In making our determination, we neither reweigh evidence nor judge witness credibility, but we will consider only the evidence and reasonable inferences therefrom which support the judgment. We may affirm the judgment on any legal theory supported by the findings if that theory is consistent with all of the trial court's findings of fact and the inferences reasonably drawn from the findings[,] and if we deem such a decision prudent in light of the evidence presented at trial and the arguments briefed on appeal.

*Bertholet v. Bertholet,* 725 N.E.2d 487, 495 (Ind.Ct.App.2000) (citations and internal quotation marks omitted).

■ The statute of frauds requires contracts for the sale of real property to be in writing. *See* IND.CODE § 32–2–1–1. "The statute is intended to preclude fraudulent claims which would probably arise when one person's word is pitted against another's and which would open wide those ubiquitous flood-gates of litigation." *Perkins v. Owens,* 721 N.E.2d 289, 292 (Ind. Ct.App.1999) (citation and internal quotation marks omitted). Nevertheless, oral contracts for the conveyance of real property are voidable, not void.[3] *See Dubois County Machine Co. v. Blessinger,* 149 Ind.App. 594, 598, 274 N.E.2d 279, 282 (1971).

> Oral contracts may be excepted from the statute of frauds by the doctrine of part performance. To qualify as a part performance of the oral contract certain circumstances must be present and these circumstances must be founded on, and referable to, the oral agreement. Partial payment alone is not sufficient to constitute partial performance and removal from within the statute of frauds. Circumstances generally held sufficient to invoke the doctrine of part performance as an exception to the statute of frauds are some combination of the following: payment of the purchase price or a part thereof; possession; and lasting and valuable improvements on the land.
>
> Indiana courts have held fast to "the validity of the rationale behind the statute of frauds," and have "rather strictly adhered to requiring proof of a combination of [the aforementioned circumstances]." This required proof must be "clear and definite."

*Perkins,* 721 N.E.2d at 292 (citations omitted).

■ Possession must be unequivocal, and it must be shown that the possession relied upon was in consequence of the contract and pursuant to its conditions. *See Summerlot v. Summerlot,* 408 N.E.2d 820, 829 (Ind.Ct.App.1980); *see also Guckenberger v. Shank,* 110 Ind.App. 442, 37 N.E.2d 708 (1941). "The possession must

---

**3.** A void contract is "of no legal effect, so that there is really no contract in existence at all." BLACK'S LAW DICTIONARY 326 (abridged 7th ed.1999). A voidable contract "can be affirmed or rejected at the option of one of the parties; a contract that is void as to the wrongdoer but not void as to the party wronged, unless that party elects to treat it as void." *Id.*

be yielded by one party and accepted by the other, as done in performance of the contract." *Lux v. Schroeder*, 645 N.E.2d 1114, 1118 (Ind.Ct.App.1995), *trans. denied.*

■ Only "valuable and lasting" improvements that are founded upon the oral contract are sufficient to take an oral contract out of the statute of frauds. *Dubois County*, 149 Ind.App. at 598, 274 N.E.2d at 282. As one commentator has stated:

As in the case of possession, the improvements made will have small weight unless they are of a kind that would not have been made had there been no oral contract. They must be "referable to the contract," it is often said. This does not mean that the improvements made must have been referred to in any way in the contract but only that they are such as it would have been improvident to make in the absence of some such contract, so that they are strong circumstantial evidence of its existence. In order to be sufficient, the improvements made must be valuable and permanent in character, and substantial in amount.

4 CORBIN ON CONTRACTS § 18.15, p. 541 (Rev. ed.1997).

■ Turning to the court's decision, finding 11 states, "That Collins executed the Lease and *occupied* the Station with the expressed understanding that he would be purchasing the premises for Fifty–Five Thousand Dollars ($55,000.00) at a later date." (Emphasis added). Collins' testimony supports this finding. Indeed, he repeatedly stated that he would not have entered into the lease if not for the oral agreement to sell him the property eventually. Further, the existence of the oral contract is supported not only by Collins' testimony, but also by an internal memorandum from Jansen to his superior, by the unsigned offer to purchase, and by Collins' pursuit of a loan. Therefore, we cannot say that the findings and conclusions discussing possession were clearly erroneous.

■ Regarding improvements, finding 16 provides: "That Collins would not have spent the Seventeen Thousand Nine Hundred Sixty–Six Dollars and Sixty–Five Cents ($17, 966.65) on repairs and improvements of the Station for an eighteen (18) month tenancy if he had not expected to purchase the Station." Collins repeated this assertion more than once during testimony. Collins had been told that he would receive a reduction in the purchase price for making the required repairs. Moreover, Collins went above and beyond the repairs required by the lease, installing new carpet, windows, doors, sign, etc. These enhancements/changes, done in anticipation of the purchase, were sufficient evidence of valuable and lasting improvements. Thus, the findings and conclusions detailing the improvements were not clearly erroneous.

Given the findings and conclusions regarding an oral agreement, possession, and improvements, as well as the law on the matter, we cannot say that the court's judgment that the statute of frauds did not govern this case was clearly erroneous. *See Otterman v. Hollingsworth*, 140 Ind. App. 281, 286, 214 N.E.2d 189, 193 (1966) (citing *Horner v. McConnell*, 158 Ind. 280, 63 N.E. 472 (1902) and noting that possession and making of improvements will take an oral contract out of the statute of frauds). In reaching this conclusion, we distinguish the present case from *Perkins*, where we concluded that the statute of frauds applied. 721 N.E.2d at 293. We stated, "to the extent they have ever actually 'possessed' the disputed property, their 'possession' after entry into their respective oral contracts with Stottlemyer was the same as their 'possession' prior to such entry." *Id.; see Waymire v. Waymire*, 141 Ind. 164, 167, 40 N.E. 523, 524 (1895) ("[A] mere remaining in possession under the terms of a parol contract of purchase of land is not sufficient to take the contract out of the statute of frauds."). Further, we concluded that the improvements in *Perkins* were done prior to the

formation of the oral contract, not of a permanent nature or substantial amount, or not done on the disputed tract. In contrast, Collins did not possess the premises and begin making substantial improvements until *after* he and Jansen reached an oral agreement regarding the purchase.

## II. Constructive Fraud

Marathon next contends that the findings and conclusions regarding constructive fraud are clearly erroneous. Specifically, it notes that Collins made the first contact with Jansen rather than vice versa. Marathon also contends that the utilities were not disconnected until after Collins was constructively evicted. In addition, it points out that Jack Lee ("Lee"), the former tenant of the site, stated (1) that Marathon fixed all three leaks that existed when he occupied the premises, (2) that he never smelled gas, (3) and that when he visited Collins, Collins did not mention any problems. Marathon challenges the finding that it was aware of contaminated soil. Finally, Marathon contends that the record is devoid of any affirmative statements about the condition of the premises or promises made about the condition of the premises.

 "Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Stoll v. Grimm,* 681 N.E.2d 749, 757 (Ind.Ct.App.1997) (internal quotation marks omitted). The elements of constructive fraud are:

(1) a duty existing by virtue of the relationship between the parties;

(2) a violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;

(3) reliance thereon by the complaining party;

(4) injury to the complaining party as a proximate result of that reliance; and

(5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Town & Country Homecenter of Crawfordsville, Indiana, Inc. v. Woods,* 725 N.E.2d 1006, 1011 (Ind.Ct.App.2000), *trans. denied.*

The court made the following findings and conclusions:

1. That some time early 1990, [Collins] contacted [Marathon] about the vacant Service Station ... (Collins' testimony).

. . . .

4. That subsequently Collins was contacted by [Jansen], an employee of Marathon who handled the negotiations with Collins on behalf of Marathon. (Collins' testimony).

. . . .

20. That prior to the negotiations with Collins, Jansen was aware of a problem of contaminated soil at the Station site (Collins' Exhibit Q).

21. That Jansen initially included reference to the soil contamination in Marathon's form 501 internal memo (Collins' Exhibit R), but this information was subsequently deleted from the form (Collins' Exhibit S).

22. That Jansen did not advise Collins of the soil contamination problem at the time of their negotiation, and Collins would not have leased or agreed to purchase the Station if he had been advised of this situation (Collins' testimony).

. . . .

24. That on or about January 23, 1992, Collins was evicted from the Station, at which time the sewage, water, electricity and gas were all disconnected from the Station. (Collins' testimony).

25. That Marathon has not yet obtained permission from [IDEM] to reconnect the sewage to the Station, and has only found one tenant—for a period of about two (2) weeks—to rent the Station since January 1992. (Cramer testimony).

26. That during June 1992, IDEM refused to allow Marathon to lease or use the Station, because IDEM claimed the property was "too contaminated/hazardous to lease for any purpose." (Collins' Exhibit T).

. . . .

2. That because Marathon knew Collins intended to purchase the property, and was spending several thousand dollars on repairs, Marathon had a duty to advise Collins of the petroleum contamination on the property.

3. That Marathon's failure to disclose was misleading, and Collins relied to his detriment on the misrepresentation concerning the condition of the property and its fitness for Collins' intended use.

. . . .

6. That as a result of Marathon's failure to disclose, which constitutes Constructive Fraud, even if not intentional, Collins incurred damages in the sum of Fifty–Seven Thousand One Hundred Eighty–Three Dollars and Eighty–Three Cents ($57,183.83) for which he is entitled to be reimbursed.

 We address each of Marathon's assertions in turn. First, while finding 4 states that Collins was contacted by Jansen, finding 1 clarifies that Jansen was returning Collins' call. In any event, we do not see and Marathon does not explain how this fact supports its challenge to the constructive fraud conclusion. Second, while the utilities were not disconnected until shortly after Collins was ejected from the property, IDEM, the fire chief, and the utility companies precluded Collins from staying on the premises. Again, we do not see and Marathon does not demonstrate the relevance of this distinction. Third, we presume that Marathon's reference to Lee's statements is an

attempt to imply that there was no contamination problem. However, IDEM disagreed and would not permit the use of the contaminated land until Marathon finally remediated the site. Fourth, Marathon's internal documents and testimony from its current real estate employee do not support its claim that Jansen [4] was unaware of the contamination. Fifth, although Marathon is correct that the record does not indicate affirmative misrepresentations on its part, omissions can be the basis of constructive fraud claims. *Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 582 (Ind.Ct.App.1999) ("[I]n order to establish [constructive fraud], the complaining party must have had a reasonable right to rely upon the statements made or omitted."), *trans. denied.* In summary, Marathon has not shown that the constructive fraud findings and conclusions were clearly erroneous.

### III. Damages

 Finally, Marathon disputes the damages. In particular, it alleges that the damages based upon the floor plan costs and lost sales were pure speculation. Also, it claims that the lease required that Collins furnish the new roof, furnace, and driveway, therefore making reimbursement improper. In addition, Marathon claims that the court did not make any findings concerning the damages claimed by Marathon. We disagree on all counts.

> Generally, the computation of damages is a matter within the sound discretion of the trial court. A damage award will not be reversed upon appeal unless it is based on insufficient evidence or is contrary to law. In determining whether the award is within the scope of the evidence, we may not reweigh the evidence or judge the credibility of witnesses.

---

**4.** Unfortunately for our review, Jansen did not testify, though he apparently lived in the area during the time of trial. Thus, the record consists primarily of Collins' testimony, documents, the current Marathon real estate employee's testimony, and Lee's deposition.

*Haas Carriage, Inc. v. Berna,* 651 N.E.2d 284, 289 (Ind.Ct.App.1995) (citations omitted).

 "Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Johnson v. Scandia Assocs., Inc.,* 717 N.E.2d 24, 31 (Ind. 1999). "This follows the rule of *Hadley v. Baxendale,* 156 Eng. Rep. 145 (1854), and generally limits consequential damages to reasonably foreseeable economic losses." *Id.* Consequential damages may include lost profits,[5] providing the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness. *See Clark's Pork Farms v. Sand Livestock Sys.,* 563 N.E.2d 1292, 1298 (Ind.Ct.App.1990). A factfinder may not award damages on the mere basis of conjecture and speculation. *Farm Bureau Mut. Ins. Co. v. Dercach,* 450 N.E.2d 537, 540 (Ind.Ct.App.1983), *trans. denied.* However, lost profits need not be proved with mathematical certainty. *Id.* at 541. Lost profits are not uncertain where there is testimony that, while not sufficient to put the amount beyond doubt, is sufficient to enable the factfinder to make a fair and reasonable finding as to the proper damages. *Jerry Alderman Ford Sales, Inc. v. Bailey,* 154 Ind.App. 632, 652, 291 N.E.2d 92, 106 (1972). "Generally, damages for fraud are those which are the natural and proximate consequences of the act complained of." *Estate of Ryan v. Great–West Life Assur. Co.,* 517 N.E.2d 109, 111 (Ind. Ct.App.1987).

The court broke down Collins' damages as follows:

| | |
|---|---|
| Remodeling and repair of Station | $17,966.95 |
| Advertising Jackets | $ 230.00 |
| Wholesale of vehicles | $11,300 = ($24,700 − $16,000) + ($11,000 − $8,400) |
| Deficiency on Floor Plan | $45,833.82 |
| Total | $75,330.77 |

| | |
|---|---|
| Remodeling and repair of Station | $17,966.95 |
| Advertising Jackets | $230.00 |
| Wholesale of vehicles | $11,400.00 |
| Deficiency on Floor Plan | $45,783.82 |
| Total | $75,380.77 |

However, the court then awarded Collins damages of $17,966.95 on the oral contract and $57,183.83 on the constructive fraud claim, for a total of $75,150.78.

The evidence reveals that Collins wished to acquire the Marathon property because it was an ideal location for the used car business he wished to operate. Hence, he sought to purchase the property, entered into an oral agreement with Jansen to do so, and then agreed (as per Marathon's request) to rent it temporarily under the conditions outlined by Marathon in its lease. In anticipation of his purchase, Collins expended $17,966.95 for the repair and renovation of the property. In addition, he spent $230.00 for jackets with his used car business's address and telephone number on them. He entered into a floor plan arrangement with Star to provide inventory.

When Collins was ejected from the property, he moved his business to a nearby but far less desirable location. His business failed, leaving him with 18–22 vehicles in stock. Having bills to pay, Collins was forced to quickly sell his inventory. He sold four cars valued at a total of $24,700.00 for $16,000.00, sold two cars valued at $11,000.00 for $8,400.00, and took the remainder of his inventory to an auto auction. Despite this liquidation, Collins was still $45,833.82 short on his floor plan. Thus, he took out a mortgage on his home and repaid Star.

Using the aforementioned evidence from the record, we break down the damages as follows:

Thus, the only error we see in the damages awarded to Collins is in Marathon's

---

**5.** At the Marathon location, Collins had been realizing a profit of approximately $1,200.00 per car, yet, he did not seek lost profits in his counterclaim.

favor. That is, Collins appears to have been entitled to an additional $179.99 ($75,330.77–$75,150.78). However, we are not inclined to alter Collins' award since he did not appeal the adequacy of the award. Indeed, Collins submitted the findings and conclusion that the court adopted, thus creating this minor discrepancy.

■ We are likewise unpersuaded by the argument regarding the damages awarded to Marathon. Finding 37 provides:

> That at the time of eviction, Collins was indebted to Marathon in the sum of Four Thousand Nine Hundred Dollars ($4,900.00) for unpaid rent, and Marathon was indebted to Collins in the sum of Three Thousand One Hundred Dollars ($3,100.00) (One Thousand Dollars ($1,000.00) for reimbursement on siding and three (3) months rent abatement) for a net of One Thousand Eight Hundred Dollars ($1,800.00) due Marathon from Collins.

This finding was unambiguous, amply supported by the evidence, and not clearly erroneous.

Affirmed.

NAJAM, J., concurs.

SULLIVAN, J., concurs and concurs in result with separate opinion.

SULLIVAN, Judge, concurring and concurring in result

I fully concur with regard to Parts I and III. I concur in result as to Part II.

With respect to the latter, I am troubled by the trial court's Conclusion 6 in connection with the majority's reliance upon the valid legal principle that constructive fraud may be founded upon omissions as well as upon affirmative misrepresentations. Conclusion 6 states that even if Marathon's failure to disclose were merely negligent,

instead of intentional, such would constitute constructive fraud for which damages may be awarded.

However, my reading of *Darst v. Illinois Farmers Insurance Co.* (1999) Ind. App., 716 N.E.2d 579, relied upon by the majority, convinces me that the concept of negligent misrepresentation is very limited and will not be extended beyond the holding of *Eby v. York Division, Borg–Warner* (1983) Ind.App., 455 N.E.2d 623.

*Eby* involved an affirmative misrepresentation, but the negligent misrepresentation concept, as opposed to an intentional misrepresentation, was extended to an employer-employee relationship. *Darst* did indeed indicate that, as in *Eby,* we may apply a negligent misrepresentation principle beyond a setting involving a "professional,"[6] but it clearly stated: "... we decline to extend the [constructive fraud] tort's application beyond the specific facts of *Eby.*" 716 N.E.2d at 584. In this regard it should be noted that *Eby* did not involve an omission to disclose where a duty to disclose existed.

I would hold that Conclusion 6 is in error, to the extent that it permits recovery for an unintentional failure to disclose *under these facts,* but that the judgment is supported by evidence which permits a conclusion that the failure to disclose the soil contamination here was in fact intentional.

---

**6.** The *Eby* court acknowledged that in applying the principle to the giving of a professional opinion, the application might well create substantial confusion in attempting to delineate between "professional opinion (malpractice) [and] simple misrepresentations made in the course of one's professional activities." 455 N.E.2d at 629.