**SOUTH HAVEN SEWER WORKS, INC., Appellant–Plaintiff,**

v.

**Stephen L. JONES, Appellee–Defendant.**

**No. 64A03–0101–CV–15.**

Court of Appeals of Indiana.

Nov. 8, 2001.

Paul A. Rake, Carli D. Fish, Eichhorn & Eichhorn, Hammond, IN, for Appellant.

James L. Wieser, Randy H. Wyllie, Wieser & Sterba, Schererville, IN, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

South Haven Sewer Works, Inc., appeals the trial court's grant of summary judgment in favor of its former employee, Stephen Jones, in an action seeking damages for allegedly fraudulent conduct by Jones during the course of his employment. We affirm.

### Issue

The restated issue before us is whether South Haven is precluded from recovering damages from Jones for his allegedly fraudulent conduct in offering false testimony and documents to the Indiana Utility Regulatory Commission (IURC) during a ratemaking hearing for South Haven, which fraud the IURC discovered and attributed to South Haven and which may have contributed to the IURC's decision not to grant South Haven's rate increase request.

### Facts

The facts most favorable to the summary judgment nonmovant, South Haven, reveal that it is a public utility that provides sewer service to residents in rural areas of Porter County. South Haven employed Jones as its on-site general manager. His duties included the preparation and submission of documentation to various federal and state agencies, including the IURC. In June 1997, South Haven filed a petition with the IURC, seeking an increase in its schedule of rates and charges for sewage disposal service. An IURC administrative law judge conducted an evidentiary hearing on the petition on April 20, 1998. At that time, Jones sponsored an exhibit that purported to be a copy of a letter sent to him, in his capacity as South Haven's general manager, by Midwest Contract Operations (MCO), which stated as follows:

> We would like to thank you for allowing us the opportunity to provide a quotation for operations of the South Haven Wastewater Treatment Plant. We have reviewed the information which you sent us and what we received during our site visits. After careful consideration of this project, we have decided to not submit a proposal for these services.
>
> We feel that it would be very difficult to provide substantial cost savings if our staff only performed operations of the treatment facility due to the time requirements with operations of your type of facility.
>
> If you have any questions, please contact our office....
>
> Sincerely,
>
> Midwest Contract Operations, Inc.

Appendix, § 4(C).[1] The Office of Utility Consumer Counsel (OUCC) challenged the

---

1. We remind counsel that Indiana Appellate Rule 51(C) requires the pages of the appendix to be numbered consecutively, which would make citation to and finding of portions of the appendix an easier task for all concerned.

authenticity of this copied letter. It presented another copy of the letter, allegedly obtained directly from MCO, which contained the following conclusion to the second paragraph: *"However, should you consider quotations for full operations including lab testing and maintenance, we feel we could provide you excellent service with substantial savings to you and the residents of South Haven."* Appendix, § 4(B) (emphasis added). In Jones' copy of the letter, there was a blank space where this sentence was found in the OUCC's copy of the letter. Jones assured South Haven's legal counsel, its president, and its corporate secretary that he could produce an original of the MCO letter he had received and also claimed it did not contain this additional sentence. He did not produce this "original" of the letter until July 21, 1998. At a subsequent IURC hearing on October 5, 1998, South Haven's president sponsored this "original" letter as an exhibit. The OUCC, however, called the author of the MCO letter and his secretary to testify at the hearing, who testified to the accuracy of the copy of the letter sponsored by the OUCC and the additional sentence it contained. It was also observed that several small but definite differences in type-spacing and the signature line existed between Jones' purported "original" letter and both the letter presented by the OUCC and the "copy" of the letter Jones sponsored at the April hearing. In November 1998, before the IURC issued its ratemaking decision, Jones admitted to South Haven's president that he had directed a "printer" to fabricate the "original" copy of the MCO letter that South Haven presented at the October hearing, though Jones continued to insist that the letter he sponsored at the April hearing was not altered in any way. South Haven evidently did not inform the IURC of this development.

In the end, the IURC denied South Haven's rate increase request, although the precise reasons for that denial are not found in the designated materials. However, the issue of Jones' testimony and the letter from MCO may have played a role in its decision:

> From all of the above, we conclude that Petitioner has sponsored two false documents, apparently for the purpose of supporting its testimony that its operations are being run in an efficient manner. Because Petitioner has supplied false testimony suggesting that its operations are efficient, we suspect the opposite may be true. We will keep this in mind as we analyze the evidence below.

Appendix, § 4(A), p. 4. Jones voluntarily terminated his employment with South Haven shortly thereafter. Several months later, Jones allegedly admitted to South Haven's corporate secretary that not only had he fabricated the "original" copy of the MCO letter presented at the October hearing, he had also "whited-out" the second sentence in the second paragraph of the "copy" of the letter he presented at the April hearing. Jones claimed to have taken this course of action because the possibility of MCO being able to operate South Haven more efficiently threatened his personal job security.

Not satisfied with Jones' resignation of his position, South Haven sued Jones, alleging his misconduct surrounding the MCO letter caused it damages because "his fraudulent and wrongful conduct was imputed to the Plaintiff [by the IURC]." Appendix § 1, p. 2. The complaint asserted that Jones: (1) breached his duty to South Haven to operate the business and facilities in a reasonable manner; (2) breached his employment contract with South Haven; (3) tortiously interfered with South Haven's business relations; and (4) slandered South Haven's business reputation. Jones moved for summary judgment,

which the trial court granted on December 7, 2000. This appeal ensued.

### Analysis

■■■ A grant of summary judgment requires that no genuine issue of material fact exist and that the movant be entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Lake County Equal Opportunities Council v. Greer,* 735 N.E.2d 206, 208 (Ind.2000). On appeal from summary judgment, the reviewing court analyzes the issues in the same fashion as the trial court, de novo. *Greer,* 735 N.E.2d at 208. The court must also view the pleadings and designated materials in the light most favorable to the non-movant. *Id.* We may sustain a grant of summary judgment upon any theory supported by the designated materials. *Pohle v. Cheatham,* 724 N.E.2d 655, 658 (Ind.Ct.App.2000). Even if we fully accept South Haven's assertions as to the egregiousness of Jones' conduct as stated in the "Facts" section of this opinion, we hold that Jones was entitled to judgment as a matter of law.

Jones argues that South Haven's sole claim is "that it was damaged by his testimony before the [IURC]." Appellee's Brief p. 1. We agree with South Haven that this is a too-narrow interpretation of its complaint. Construing the complaint most favorably to South Haven, it also alleges damages resulting from his fabrication of documents put before the IURC and his attempts to mislead not only the IURC but also the officers of and counsel for South Haven as to the authenticity of those documents. Thus, South Haven's allegation that it was harmed by Jones' testimony at the April 1998 hearing is only one component of its damages claim.

South Haven claims the denial of its 1997 rate increase request and its cause of action against Jones are "autonomous," and that the "sole purpose of South Haven's cause of action against Jones is merely to seek damages from Jones that are a direct result of Jones' fraudulent conduct." Reply Brief p. 3. The difficulty with this claim is that we are unable to discern, even after looking at all the pleadings, designated materials, and briefs in the light most favorable to South Haven, what ascertainable damages could possibly be "directly related" to Jones' conduct aside from what transpired at the IURC proceedings. The only harm we perceive from Jones' conduct manifested itself when the IURC discovered his fraudulent activity and South Haven continued to vouch for the authenticity of the altered MCO letters in spite of the contrary evidence the OUCC had uncovered; South Haven fails to specify how or in what manner it was otherwise harmed by this sequence of events. We thus conclude that South Haven's cause of action is indeed, as Jones argues, essentially an attempt to collect from him the amount of the rate increase that the IURC might have awarded South Haven had it not been for Jones' conduct. Any other measure of damages in this case would be the result of speculation and conjecture, which is impermissible. *See Marathon Oil Co. v. Collins,* 744 N.E.2d 474, 482 (Ind.Ct.App.2001).

■■■ To allow this cause of action to proceed, therefore, would require a trial court to collaterally reevaluate the IURC's decision to deny South Haven's rate increase request. This would run afoul of longstanding Indiana case law and public policy. " 'It has long been the law in Indiana that a litigant defeated in a tribunal of competent jurisdiction may not maintain an action for damages against his adversary or adverse witnesses on the ground the judgment was obtained by false and fraudulent practices or by false and forced evidence.' " *Dodd v. Estate of Yanan,* 625 N.E.2d 456, 457 (Ind.1993) (quoting *Anderson v. Anderson,* 399 N.E.2d 391, 399 (Ind.Ct.App.1979)). The

rule is based in part upon concern for protecting the validity of judgments against collateral attack, and preventing "interminable" litigation arising from a losing party's suing of witnesses who were disfavorable to their case. *See Hermon v. Jobes,* 209 Ind. 196, 201–02, 198 N.E. 316, 318–19 (1935). South Haven claims this rule does not apply to its cause of action against Jones for two primary reasons: the IURC's ratemaking decision here was not a "judgment" resulting from judicial action, and Jones was not an "adverse witness."

 We are, of course, well aware that "rate making is a legislative and not a judicial function." *State ex rel. Indianapolis Water Co. v. Boone Circuit Ct.,* 261 Ind. 583, 586, 307 N.E.2d 870, 872 (1974). However, ratemaking decisions by the IURC are subject to judicial review for the purpose of determining whether specific findings exist as to all factual determinations material to the IURC's ultimate conclusions; whether substantial evidence within the record as a whole supports the findings of fact; and whether the decision, ruling, or order is contrary to law. *Office of Utility Consumer Counselor v. Citizens Telephone Corp.,* 681 N.E.2d 252, 255 (Ind. Ct.App.1997); *see also* Ind.Code § 8–1–3–1. Thus, while ratemaking decisions by the IURC constitute legislative action, such decisions are subject to direct review in a manner similar to judicially-rendered judgments. Also, ratemaking decisions are not subject to collateral attack. *See State ex rel. Indianapolis Water Co.,* 261 Ind. at 588, 307 N.E.2d at 873. Additionally, the general rule prohibiting the suing of persons who may have contributed to an unfavorable result in a collateral proceeding is even more appropriate when the collateral proceeding at issue is an administrative agency action as opposed to a judicial action. Specifically, courts give great deference to and are reluctant to interfere with the decision-making pro-

cesses of administrative agencies because of the expertise of such agencies in their particular assigned area. *See, e.g., City of Indianapolis v. Woods,* 703 N.E.2d 1087, 1090–91 (Ind.Ct.App.1998), *trans. denied.* A court's attempt, either at the trial or appellate level, to calculate precisely the impact that a particular witness or piece of evidence may have had on an agency decision would constitute such interference. Given these considerations, we hold that the prohibition against suing witnesses who present testimony or evidence that allegedly led to an unfavorable litigation result also applies to witnesses who allegedly contributed to an unfavorable administrative agency decision, such as an IURC ratemaking decision.

South Haven had its chance in 1998 to present its case for a rate increase to the IURC. Part of its strategy was to continue to rely on Jones' claims regarding the authenticity of his copies of the MCO letter in the face of strong contrary evidence from the OUCC. Furthermore, South Haven took no action either by way of discharging Jones or informing the IURC (before it issued its ratemaking decision) when South Haven obtained an admission from Jones that he had completely fabricated the "original" of the MCO letter presented at the October 1998 hearing. Having followed this course of action, South Haven cannot now be permitted to pursue damages from Jones that can only be ascertained in reference to the denial of its rate increase request.

We note in any event that other factors may have played a role in the IURC's rate increase denial. The designated materials do not contain the full text of the IURC's order, so we do not know the entire extent of the evidence for and against the rate increase request nor details of the IURC's reasoning. However, there are references to customer complaints about South Ha-

ven's rates and quality of service, as well as accounting irregularities, neither of which problems South Haven attempts to attribute to Jones. It would be a dangerous encroachment upon the integrity of the IURC's rate-making decision in this case to permit a trial court to guess as to whether the IURC would have granted a rate increase to South Haven but for the MCO letter "incident," and to guess as to what such an increase might have been. Furthermore, a trial court should not be asked to gauge the effect this incident may have had on South Haven's credibility before the IURC, an independent administrative body. South Haven states in its reply brief that it has sought another rate increase from the IURC; it appears to us that if South Haven is concerned about its ongoing integrity before the IURC, the pending rate-increase proceeding would be the proper forum to present evidence that it was "duped" by Jones in connection with the previous rate increase proceedings and to attempt to distance itself from Jones and his conduct.

South Haven also claims that the rule against collateral attacks on adjudications does not apply here because Jones was not an "adverse witness" in that he did not testify against South Haven in the traditional sense; he was only "adverse" to South Haven's case because his fraudulent conduct was discovered by the IURC, which in turn imputed that conduct to South Haven. It seems to us, however, that the policy behind prohibiting lawsuits against persons who may have adversely affected a party's case is equally compelling as to a party's own witnesses or document preparers. Parties such as South Haven bear the burden of presenting their own case; it also follows that parties should bear the burden of ensuring that its case is well-presented and should bear the risk of any harm that may result from its case being poorly or inaccurately presented. Otherwise, the integrity of adju-

dications or agency decisions would be undermined, and every judicial or agency proceeding could potentially spawn lawsuits by a "losing" party against anyone who may have harmed that party's case. This would be contrary to long-standing Indiana policy. *See Hermon*, 209 Ind. at 201–02, 198 N.E. at 318–19.

 We also briefly address Indiana Code Section 8–1–2–74, which the parties raised and which provides that in certain proceedings before the IURC,

no person having so testified shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may have testified or produced any documentary evidence; *provided, that no person testifying shall be exempted from prosecution or punishment for perjury in so testifying.*

(Emphasis added). South Haven claims that the highlighted part of this statute allows it to sue Jones for his alleged perjury before the IURC. We disagree. The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the plain and ordinary meaning of the language used. *State v. C.M.B. III Enterprises, Inc.*, 734 N.E.2d 653, 659 (Ind.Ct.App.2000), *trans. denied.* Additionally, we presume that the legislature is aware of the common law, and it is a rule of statutory construction that the legislature does not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 25 (Ind.Ct.App.1999), *trans. denied.*

 We conclude it is clear that "prosecution and punishment for perjury" refers to criminal prosecutions and punishment for perjury, not civil actions and damages. For example, multiple sanctions against an individual are only viola-

tive of criminal Double Jeopardy protections if the sanctions can be characterized as a "punishment." *See, e.g., Bryant v. State,* 660 N.E.2d 290, 295–96 (Ind.1995), *cert. denied,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). Also, to construe Indiana Code Section 8–1–2–74 as permitting civil lawsuits for perjury would constitute an abrogation of the common law and its general prohibition against such lawsuits, as we have discussed. We see nothing in the statute to suggest such an abrogation, either expressly or by unmistakable implication. Section 8–1–2–74 does not provide South Haven an avenue for a cause of action against Jones.

### Conclusion

Even assuming Jones engaged in fraudulent conduct, such fraud only resulted in damages through the IURC's denial of South Haven's rate increase petition and possibly some damages related to South Haven's credibility before the IURC. To attempt to ascertain such damages would require collateral judicial interference in the IURC's rate-making process, which is impermissible. South Haven's remedy is to prosecute its current rate increase petition before the IURC and to argue its case as to Jones' fraud before that body. The trial court properly granted summary judgment to Jones.

Affirmed.

MATTINGLY–MAY, J., and SULLIVAN, J., concur.